IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AT&T COMMUNICATIONS OF THE MIDWEST and TCG OMAHA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | 8:06CV625 |
| v. | ) ) | |
| QWEST CORPORATION, | ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

This matter is before the Court on Qwest Corporation's motion to dismiss (Filing No. 12). Having reviewed the motion, the parties' submissions,[1] and the applicable law, the Court finds that defendant's motion should be granted.

**STANDARD OF REVIEW**

In considering a motion to dismiss a complaint under Rule 12(b)(6), the Court must assume all the facts alleged in the complaint are true and must liberally construe the complaint in the light most favorable to the plaintiff. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young,* 244 F.3d at 627. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes

---

[1] The Court will grant AT&T's motions for leave to file supplemental authority (Filing Nos. 23 and 24). Qwest's motion for leave to file supplemental authority (Filing No. 25) will be denied as moot.

allegations that show on the face of the complaint that there is some insuperable bar to relief.  *Schmedding*, 187 F.3d at 864.

## BACKGROUND

**I.      Telecommunications Act of 1996**

The Telecommunications Act of 1996 ("the Telecommunications Act") encourages competition among telecommunication providers by *inter alia* obligating telecommunications companies to interconnect with one another. Sections 251 and 252 of the Telecommunications Act require incumbent local exchange carriers ("ILECs") to lease their networks to requesting competitive local exchange carriers ("CLECs").[2]  47 U.S.C. §§ 251(c), 252(b).  Under the Telecommunications Act, ILECs must submit any interconnection agreements they form with CLECs to the relevant state public utilities commission for approval.  *Id.* at §§ 252(a),(e).  The Telecommunications Act requires ILECs to make the terms of any approved interconnection agreements to which they are parties available to requesting non-party CLECs upon "the same terms and conditions, in addition to rates, as those provided in the agreement."  *See* 47 U.S.C. § 252(i); 47 C.F.R. § 51.809(a).

---

[2] Local exchange carriers ("LECs") are defined as "any person that is engaged in the provision of telephone exchange service or exchange access."  47 U.S.C. § 153(24).  Incumbent local exchange carriers ("ILECS") refer to any LEC, with respect to an area, that provided telephone exchange service on February 8, 1996, and was deemed to be a member of the exchange carrier association on that date pursuant to 47 C.F.R. 69.601(b), or its successor or assignee.  47 U.S.C. § 251(1).

**II.       Factual Background**

Pursuant to the Telecommunications Act, plaintiffs, AT&T Communications of the Midwest ("AT&T") and TCG Omaha, Inc. ("TCG") (collectively, "AT&T"), entered into interconnection agreements with Qwest Corporation ("Qwest").  The complaint alleges Qwest agreed to act in accordance with the Telecommunications Act and make products and services available to AT&T on nondiscriminatory rates, terms and conditions.  The complaint further alleges that Qwest breached its agreements with AT&T when Qwest entered into secret interconnection agreements with Eschelon Telecom ("Eschelon") and McLeodUSA Telecommunications Services, Inc. ("McLeodUSA") from 2000 until 2002 and failed to file these interconnection agreements with the Nebraska Public Service Commision ("NPSC") as required by the Telecommunications Act (Complaint ¶¶ 2, 3).  AT&T alleges that its interconnection agreement with Qwest obligated Qwest to notify AT&T of these interconnection agreements.  The complaint alleges that Eschelon and McLeodUSA received up to a ten percent discount on Qwest's products and services, which AT&T was entitled to receive under the terms of its interconnection agreement with Qwest.

AT&T alleges that Qwest is liable under theories of: (1) breach of contract; (2) fraud; and (3) Nebraska antitrust provisions.  Qwest argues that AT&T's claims should be dismissed because they are barred by: (1) the two-year statute of limitations established by § 415 of the Telecommunications Act;

and (2) the principles of collateral estoppel based on a decision of the Oregon Public Utility commission.

### III.     Related Decisions

The subject of this controversy has been litigated and argued in other forums.  On February 14, 2002, a complaint was filed with the Minnesota Public Service Commission ("MPSC"), accusing Qwest of failing to file certain interconnection agreements as required by the Telecommunications Act.  The MPSC opened an investigation on March 12, 2002, and AT&T participated in this proceeding.  On September 20, 2002, an Administrative Law Judge in Minnesota found that Qwest had violated the Telecommunications Act by failing to file certain interconnection agreements with the MPSC and recommended that the MPSC take action against Qwest.  Findings of Fact, Conclusions, Recommendation and Memorandum, *In re Complaint of the Minnesota Department of Commerce Against Qwest Corporation Regarding Unfiled Agreements*, 2002 WL 32129264, ¶¶ 341, 344.

The Oregon Public Utility Commission ("OPUC") determined on May 11, 2006, that 47 U.S.C. § 415(b) proscribed a two-year statute of limitations for AT&T's breach of contract claim against Qwest based on Qwest's failure to file various interconnection agreements with the OPUC.  In so deciding, the OPUC determined AT&T's claims were essentially federal in character.  *See* Oregon Public Utility Commission, Order No. 06-230, Order Granting Motion to Dismiss, *AT&T Communications of the Northwest, Inc., et al. v. Qwest Corporation*, Docket No. UM-1232

(May 11, 2006), *aff'd on reconsideration*, Order No. 06-465, Order Denying Petition for Reconsideration (August 16, 2006).

In contrast, the Washington State Utilities and Transportation Commission ("WSUTC") recently reaffirmed its decision that AT&T's breach of contract claims against Qwest for failure to file various interconnection agreements with the WUTC were based on state law and, therefore, the state law statute of limitations for breach of contract was the applicable statute of limitations for these claims.  *See* Washington State Utilities and Transportation Commission, Order No. 04, Interlocutory Order Reversing Initial Order, Denying Motion for Summary Determination or Dismissal, *AT&T Communications of the Pacific Northwest, Inc. v. Qwest Corporation*, Docket No. UT-051682 (June 7, 2006); *aff'd*, Order No. 06, Order Affirming Interlocutory Order; Allowing Amendment of Complaint; Denying Motion for Summary Determination (Dec. 21, 2006).

## DISCUSSION

Qwest argues that AT&T's claims are federal claims masquerading as state law claims and are, therefore, barred by the two-year statute of limitations set forth in 47 U.S.C. § 415. AT&T disagrees, arguing its claims are based on Nebraska law and Nebraska's four-year state statute of limitations should apply. Notwithstanding AT&T's characterization of its claims, the relationship between ILECs and CLECs is heavily regulated by the Telecommunications Act.  Any duty on the part of Qwest to file its interconnection agreements with the NPSC and to make the

terms available to other CLECs arose under §§ 252(e) and (i). The claims in this case necessarily require the Court to determine whether Qwest complied with the Telecommunications Act. In other words, the ultimate issue in this case is an interpretation of federal law.  Section 415(b) states:  "All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues. . . ."  47 U.S.C. § 415(b).  AT&T seeks damages for Qwest's alleged failure to comply with the requirements of the Telecommunications Act pursuant to AT&T's and Qwest's interconnection agreements, and AT&T may not avoid the two-year statute of limitations contained in § 415 simply by characterizing its claims as state law claims.

While the accrual date for AT&T's claims is a factual determination, the Court finds AT&T's claims clearly accrued more than two years prior to the filing of its complaint on September 1, 2006.  AT&T concedes in its opposition brief that, "at the earliest it was not until September 20, 2002, when the ALJ in the Minnesota proceeding rejected Qwest's sworn testimony and found that there was in fact a secret oral agreement with McLeod, that AT&T could have had any confidence in proceeding on a claim that there was a secret oral agreement and that, assuming such agreement applied or had a counterpart in Nebraska, it might have a cause of action here" (Filing No. 19 at 30-31).  At this time, AT&T was on notice that it may have claims against Qwest in other states, including Nebraska.

The Court finds that AT&T's claims are barred by the two-year statute of limitations contained in 47 U.S.C. § 415 and will grant Qwest's motion to dismiss.  For this reason, the Court need not address Qwest's collateral estoppel argument.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 27th day of February, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
    LYLE E. STROM, Senior Judge
    United States District Court